UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARTIN A. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 06397 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| PHILLIP MORRIS USA INC., *et al*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Martin Smith alleges that he developed laryngeal cancer as a result of smoking cigarettes. R. 1-1, Notice of Removal, Exh. 1, Compl. ¶ 2.[1] Smith filed a lawsuit in the Circuit Court of Cook County against the following manufacturers of cigarettes: Phillip Morris USA Inc., R.J. Reynolds Tobacco Company, and Liggett Group LLC (together the "Manufacturer Defendants"). Also named in the lawsuit are a few retailers of cigarettes. One is drug-store giant Walgreen Company. The other three retailers are gas stations where Smith bought cigarettes: JAMS BO Properties, Inc.; 1401 State Line, Inc.; and Ibrahim Mubarak d/b/a Citgo (together with Walgreen, the "Retailer Defendants"). *Id*. ¶¶ 4-11.

The Manufacturer Defendants removed the action to this Court, asserting complete diversity between Smith, who is an Illinois citizen, and the Manufacturer Defendants, who are all citizens of states other than Illinois. R. 1, Not. of Removal; Compl. ¶¶ 4-6, 14. The Manufacturer Defendants acknowledged that the Retailer

---

[1]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

1

Defendants are not diverse to Smith. But the Manufacturing Defendants argue that the Retailer Defendants' citizenship should be disregarded for diversity-jurisdiction purposes because Smith fraudulently joined them. Notice of Removal ¶¶ 17-38. Smith filed a motion to remand the case back to state court, arguing, unsurprisingly, that he did not fraudulently join the Retailer Defendants. R. 47, Mot. to Remand. For the reasons explained below, Smith's motion is granted and the case is remanded to Cook County Circuit Court.

## I. Legal Standard

A defendant may remove an action filed in state court to federal court in any case in which the plaintiff could have filed the case in federal court. 28 U.S.C. § 1441(a). The party seeking removal bears the burden of demonstrating federal jurisdiction, "and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). Where, as here, defendants invoke diversity jurisdiction, the defendants must demonstrate complete diversity of citizenship and an amount in controversy exceeding $75,000. *Id.* at 758; *see also* 28 U.S.C. § 1332(a). Neither party contests the amount in controversy, so the only issue is whether there is complete diversity under the fraudulent-joinder doctrine.

Under the doctrine of fraudulent joinder, a federal court considering removal may "disregard, for jurisdictional purposes, the citizenship of certain non-diverse defendants, assume jurisdiction over a case, dismiss the non-diverse defendants, and

2

thereby retain jurisdiction." *Schur*, 577 F.3d at 763 (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)). Despite the doctrine's name, actual "fraud" is not needed to successfully invoke fraudulent joinder. *See Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011). A removing defendant can also "show that, after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause against the in-state defendant." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). Put another way, "the district court must ask whether there is 'any reasonable possibility' that the plaintiff could prevail against the non-diverse defendant." *Schur*, 577 F.3d at 764 (quoting *Poulos*, 959 F.2d at 73).

A removing defendant bears a "heavy burden" to establish fraudulent joinder. *Schur*, 577 F.3d at 764; *Poulos*, 959 F.2d at 73. The Seventh Circuit has suggested that this "burden is even more favorable to the plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Schur*, 577 F.3d at 764 (collecting cases). Courts typically conclude that there is fraudulent joinder where the plaintiff asserts a claim against a non-diverse defendant "that simply has no chance of success whatever the plaintiff's motives." *Poulos*, 959 F.2d at 73; *see also Walton*, 643 F.3d at 999.

## II. Analysis

Smith brings only two claims against the Retailer Defendants—strict liability and negligence. *See* Compl. ¶¶ 121-131. In light of the fraudulent-joinder standard, the question is whether there is any reasonable possibility that Smith can prevail against the Retailer Defendants on either the strict liability claim or the negligence

3

claim. If Smith has a reasonable possibility of success on even one of his claims against the Retailer Defendants, then the Court must count the Retailer Defendants' Illinois citizenship for jurisdictional purposes and send the case back to state court.

**A. Negligence**

To establish a valid claim for negligence under Illinois law, "a party must demonstrate that the defendant owed him a duty, that the defendant breached this duty, and that he suffered an injury that was proximately caused by the defendant's breach." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009) (citing *Cunis v. Brennan*, N.E.2d 617, 618 (1974)); *see also Brobbey v. Enter. Leasing Co. of Chicago*, 935 N.E.2d 1084, 1093 (Ill. App. Ct. 2010). The Manufacturer Defendants argue that Smith has no reasonable possibility of success on his negligence claim because (1) he failed to allege sufficient facts that the Retailer Defendants owed him a duty, or that any breach of duty proximately caused his injury; and (2) any allegation that the Retailer Defendants are liable for failing to stop selling cigarettes is preempted under federal law. R. 53, Defs.' Resp. Br. at 19-20. It might be that the Manufacturer Defendants have solid Rule 12(b)(6) arguments on the merits. Ultimately, however, the Defendants have failed to show that there is no reasonable possibility that Smith can prevail.

It is true that the complaint generally speaking lacks factual specificity as to the Retailer Defendants. As far as the duty element goes, Illinois law recognizes a duty to warn "when there is unequal knowledge and the defendant, possessed with such knowledge, knows or should know that harm might occur if no warning is given."

4

*Gray v. Nat'l Restoration Sys., Inc.*, 820 N.E.2d 943, 957 (2004). Here, Smith argues that the Retailer Defendants owed a duty to Smith, arising out of their unequal knowledge about the dangers of cigarettes. R. 60, Pl.'s Reply Br. at 4.[2] Smith's complaint, however, is devoid of any factual allegations supporting this theory. Smith only very generally alleged, for example, that the Retailer Defendants "had a duty to use reasonable care in placing into the stream of commerce, distributing, marketing, promoting, and selling" the defective cigarettes. Compl. ¶ 126. Smith also alleged that the Retailer Defendants "knew or should have known" of the dangers of the cigarettes, which, according to Smith, were unknown to the public (including Smith). *Id.* ¶ 128. Otherwise, though, the complaint contains no specific *facts* supporting the assertion that the Retailer Defendants owed a duty so Smith.

These shortcomings, however, are not necessarily fatal to Smith's negligence claim, at least not to the point that there is no reasonable possibility of him prevailing on the claim. In assessing fraudulent joinder, the Court is not limited by the allegations in the parties' pleadings. The Court may "pierce the pleadings and consider summary judgment-type evidence such as affidavits and deposition testimony" in determining whether fraudulent joinder has occurred. *Peters v. AMR Corp.*, 1995 WL 358843, at *3 (N.D. Ill. June 13, 1995) (quoting *Carriere v. Sears*

---

[2]It bears noting that in responding to the Manufacturer Defendants' preemption arguments (discussed below), Smith argues that his claim against the Retailer Defendants is not only premised on a duty to warn. *See* R. 47, Mot. to Remand at 9. At the same time, though, Smith only argues that the duty arose from the Retailer Defendants' "superior knowledge." *See* Pl.'s Reply Br. at 4. Only the duty to warn seems to be presented by the Complaint.

5

*Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990)) (cleaned up)[3]; *see also Faucett v. Ingersoll–Rand Mining & Machinery Co.*, 960 F.2d 653, 655 (7th Cir. 1992) (considering the defendant's affidavit when evaluating whether there was fraudulent joinder). At the same time, however, the Court must be careful not to use the evidence to "pre-try" the case. *Peters*, 1995 WL 358843, at *3. Additionally, in reviewing the evidence, the Court must give the benefit of factual and legal inferences to the plaintiff. *Id.*; *Poulos*, 959 F.2d at 73. After all, the standard is whether there is any reasonable possibility of Smith winning—not whether he has adequately stated a claim.

In support of keeping the case in federal court, the Manufacturer Defendants submitted several affidavits, including one from Dale Johnson, Walgreen's Divisional Merchandise Manager of Consumables. Among other things, Johnson avers that "Walgreens did not possess any knowledge of any alleged dangers of cigarettes that was not available to the general public." R. 53-3, Defs.' Resp. Br., Exh. 3, D. Johnson Affidavit ¶ 15. But by submitting this affidavit, the Manufacturer Defendants opened the door for Smith to submit rebuttal evidence.

To rebut the Manufacturer Defendants' evidence, Smith proffered evidence suggesting that Walgreens may have had superior knowledge over consumers that cigarettes were defective. *See* Pl.'s Reply Br., Exhs. 1-4. For example, in his reply brief, Smith included a screenshot of Walgreen's website. Online, Walgreen outlines

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

the various chemicals contained in cigarettes, and the effects that smoking has on the human body, including the "increased risk of cataracts and macular degeneration … stroke, heart disease, and erectile dysfunction." *See id*. at 6-7 (cleaned up). Smith also submitted (1) a memo from Walgreen to the Tobacco Institute expressing a "real interest in being of every possible assistance to the tobacco industry in getting the true word put about," R. 60-1; (2) a letter from Walgreen to the Tobacco Institute requesting more information related to the "raging controversy" involving the tobacco industry and expressing an interest in helping the Institute, R. 60-2; (3) a letter from Walgreen's law department to Phillip Morris requesting an agreement that Walgreen be indemnified in any future litigation arising from Walgreen's sale of tobacco products, R. 60-3; and (4) an RJ Reynolds Power Point deck presented to Walgreens about RJ Reynolds' products, R. 60-4. Taken together and in the light most favorable to Smith, these additional facts suggest that Walgreen was at the very least in close communication with tobacco industry leaders and manufacturers, including Phillip Morris and RJ Reynolds, about the dangers of cigarettes, and may have obtained knowledge on that topic that was not otherwise available to—and therefore superior to—the knowledge of the average smoker. That is not to say that the gas-station defendants had that type of access to additional information; Smith offered no more facts on those three Defendants. But all it takes is one non-diverse defendant to require a remand.

As noted earlier, it might very well be that Smith's original complaint would not survive a Rule 12(b)(6) motion. But that is not the standard when evaluating

7

fraudulent joinder. And Smith has submitted the new evidence for consideration. *See Schur*, 577 F.3d at 764 (characterizing the fraudulent-joinder standard as even more favorable to the plaintiff than the standard under Rule 12(b)(6)). Had Smith not rebutted Johnson's affidavit with his own contradictory evidence, the conclusion here might be different. *Compare Faucett*, 960 F.2d at 655 (concluding that the defendant's uncontested evidence negating any involvement with cause of action was sufficient to establish fraudulent joinder); *Hernandez v. Home Depot, U.S.A., Inc.*, 2006 WL 1647438, at *2 (N.D. Ill. June 5, 2006) (same) *with CC Indus., Inc. v. ING/Reliastar Life Ins. Co.*, 266 F. Supp. 2d 813, 816 (N.D. Ill. 2003) (resolving factual dispute in the plaintiff's favor based on the affidavit submitted by the plaintiff). But Smith has presented enough evidence to show a reasonable possibility that Walgreen had a duty to warn Smith.

The Manufacturer Defendants urge the Court to ignore Smith's proffered evidence, arguing that the "reasonable possibility … prediction must be premised on the *current* allegations—that is the allegations at the time of removal." R. 67, Defs.' Surreply Br. at 3 (quoting *Steel*, 2011 WL 1485380, at *4) (emphasis in original) (cleaned up). There are two problems with this argument. First, it contradicts the myriad of cases that have allowed a "piercing of the pleadings" to evaluate fraudulent joinder. *See, e.g.*, *Faucett*, 960 F.2d at 655. Second, the argument rings hollow in light of the outside evidence that the Manufacturer Defendants themselves asked the Court to consider. *See* Notice of Removal, Exhs. 3-5; Defs.' Resp. Br., Exhs. 1-3. It is fundamentally unfair for removing defendants to submit evidence in favor of

fraudulent joinder while arguing, at the same time, that plaintiffs are disabled from responding in kind. What's more, the circumstances here are unlike those in *Steel* or in *Poulos*, in which the plaintiffs only speculated that facts supporting their claim "*might* turn up." *Steel*, WL 1485380, at *4 (emphasis added); *see also Poulos*, 959 F.2d at 74. Smith is not asking this Court to speculate about future facts uncovered in fishing-expedition discovery. Instead, Smith has presented evidence to show a reasonable possibility of winning on the negligence claim's duty element, at least against Walgreen.

On whether there is a reasonable possibility of prevailing on the element of proximate cause, this element is typically a question of fact for the jury. *See McKenna v. AlliedBarton Sec. Servs., LLC*, 35 N.E.3d 1007, 1020 (Ill. App. Ct. 2015); *Brobbey*, 935 N.E.2d at 1095. Here again, if Walgreen had a duty to warn Smith and failed to do so, then there is a reasonable possibility that Walgreen would—at least jointly with the Manufacture Defendants—be deemed to have proximately caused Smith's injuries. There is nothing impossible about Smith's contention that he would have refrained from buying and smoking cigarettes if the retailers themselves had provided him adequate warnings. Again, it remains to be seen whether Smith's allegations against the Retailer Defendants could survive a dismissal motion, let alone survive a summary judgment motion—but that is not the question when evaluating fraudulent joinder.

Lastly, the Manufacturer Defendants defend their removal by arguing that failure-to-warn claims are expressly preempted by the Federal Cigarette Labeling

9

and Advertising Act, 15 U.S.C. §§ 1333, 1334(b). Notice of Removal at 13 (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 524 (1992); *Espinosa v. Philip Morris USA, Inc., et al.,* 500 F. Supp. 2d 979, 984 (N.D. Ill. 2007)). But the Supreme Court's decision in *Cipollone* was limited to state law failure-to-warn claims against cigarette *manufacturers*, not retailers. So the legal question remains open on whether the Federal Cigarette Labeling and Advertising Act preempts a failure-to-warn claim against retailers of cigarettes. Neither side presented the Court with case law addressing this specific question, nor was the Court able to find any. And at this stage of the case—assessing fraudulent joinder—any ambiguity in the law must be decided in Smith's favor. The Manufacturer Defendants have not met their heavy burden of establishing that Smith has no reasonable possibility of prevailing against the Retailer Defendants on his negligence claim.[4]

### B. Attorneys' Fees

Smith also requests attorneys' fees for litigating the remand motion, invoking 28 U.S.C. § 1447(c). That section provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). This provision creates no presumption in favor or against such an award: "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). "Conversely, when an objectively reasonable basis

---

[4]There is no need to address whether Smith's strict liability claim would provide a basis to defeat the fraudulent-joinder argument.

exists, fees should be denied." *Id*. The Seventh Circuit has interpreted this to mean that if, at the time the defendant filed his notice of removal, "clearly established law demonstrated that he had no basis for removal, then a district court should award a plaintiff his attorneys' fees. By contrast, if clearly established law did not foreclose a defendant's basis for removal, then a district court should not award attorneys' fees." *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007). The decision to award costs and fees rests within the district court's discretion. *Martin*, 546 U.S. at 137-39.

Here, there was no clearly established law that foreclosed the Manufacturer Defendants' attempt to remove the case. Yes, the Manufacturer Defendants did not ultimately meet their burden to show fraudulent joinder. But it took Smith's submission of evidence to defeat the argument. The propriety of removal was a close enough question here to deny the request for fees.

### III. Conclusion

In light of the burden on the defense to show fraudulent joinder and the Defendants' failure to satisfy that burden, the case must be remanded to state court for lack of complete diversity of citizenship. Smith's motion to remand is granted. The Clerk shall forthwith remand this case to the Circuit Court of Cook County. The status hearing of October 3, 2019 is vacated.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 30, 2019